UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

WEST VIRGINIA LABORERS' PENSION TRUST FUND;
WEST VIRGINIA LABORERS' TRUST FUND;
WEST VIRGINIA LABORERS' ANNUITY & SAVINGS FUND;
WEST VIRGINIA LABORERS' TRAINING TRUST FUND;
WEST VIRGINIA LABORERS' EMPLOYERS COOPERATION
AND EDUCATION TRUST;
WEST VIRGINIA LABORERS' ORGANIZING FUND;
WEST VIRGINIA LABORERS' LOCAL NO. 1353;
WEST VIRGINIA LABORERS' POLITICAL LEAGUE; and
WEST VIRGINIA LABORERS' DISTRICT COUNCIL-
POLITICAL ACTION COMMITTEE,
          Plaintiffs,

v.                                    Case No. 2:09-cv-00564

BIANCHI INDUSTRIAL SERVICES, LLC,
          Defendant

<u>MEMORANDUM OPINION AND ORDER</u>

     Currently pending before the court is Defendant's Motion for
Partial Summary Judgment, filed on April 26, 2010 (docket ## 21,
22.)  Plaintiffs responded to Defendant's Motion on May 10, 2010
(##23, 24).  Defendant replied to Plaintiffs' response on May 18,
2010 (#25).

**Jurisdiction**

     This court has subject matter jurisdiction over this civil
action which arises under laws of the United States, 28 U.S.C. §
1331.  In their Rule 26(f) report, the parties consented to a
magistrate judge conducting all proceedings and ordering entry of
judgment, pursuant to 28 U.S.C. § 636(c)(1).  (# 8.)  This

magistrate judge was specially designated to exercise such jurisdiction by this court (# 9; LR Civ P 73.1(a)).

## Summary Judgment Standard

In evaluating summary judgment motions, Rule 56 of the Federal Rules of Civil Procedure provides:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c) (2007). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of establishing that there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute. Overstreet v. Kentucky Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991).

If the moving party meets this burden, then the non-movant must set forth specific facts as would be admissible in evidence

that demonstrate the existence of a genuine issue of fact for trial.  Fed. R. Civ. P. 56(c); id. at 322-23.

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e) (2007).

A court must neither resolve disputed facts nor weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility.  Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986).  Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor.  Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979).  Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

## Allegations in the Complaint

Plaintiffs allege that Defendant, who is bound by the terms and conditions of a National Maintenance Agreement ["NMA"] which incorporates the successive collective bargaining agreements between the parties pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") and the Multiemployer Pension Plan

3

Amendment Act ("MPPAA"), (1) failed to report and pay to Plaintiffs certain hourly contributions on behalf of employees who are covered by the agreements; (2) failed to report, withhold and pay to Plaintiffs certain deductions from employees who are covered by the agreements; (3) failed to accurately report and has not paid the full amounts Defendant is obligated to contribute and/or withhold pursuant to the agreements; and (4) failed to provide Plaintiffs access to Defendant's payroll records for the purpose of auditing the Defendant's payroll records in order to determine the amounts owed to Plaintiffs and whether Defendant is correctly reporting and paying all withholdings and contributions.  (#1 at 3.)

Plaintiffs further assert that unless Defendant is required to accurately complete and file all necessary reports and pay all contributions due and owing, Plaintiffs will suffer irreparable harm for which there is no adequate remedy at law.  (#1 at 4.) Plaintiffs seek reasonable attorney fees and the costs incurred in this action together with the costs of any audits performed to determine liability.  (Id.)

**Defendant's Motion for Partial Summary Judgment**

Defendant moved for Partial Summary Judgment as to any and all claims of Plaintiffs relating to projects other than Defendant's work at the Bayer CropScience Charleston Plant.  Defendant states that it is signatory to the National Maintenance Agreement ("NMA"), a "site-specific" agreement that applies only to those job sites as

4

to which it has been extended by approved application to the National Maintenance Agreement Policy Committee ("NMAPC"). (#21 at 1-2.)   Specifically, Defendant asserts that

> In this case, the plaintiffs' claim appears to relate to all of Bianchi's work in West Virginia, not just that job site to which the NMA has been extended.  This is also the case with respect to the audit performed by the plaintiffs.  The report includes fringe benefits for employees performing work not covered by the NMA.  For these reasons Bianchi seeks summary judgment as to that portion of the plaintiffs' claims relating to work other than that performed at the Bayer CropScience Charleston Plant.

(#22 at 2.)

Defendant describes itself as

> an industrial maintenance contractor organized in the state of New York.  It has performed maintenance work during the last several years at two locations in the state of West Virginia, the Bayer CropScience Charleston Plant and the FMC Corporation, South Charleston Plant.  As noted, Bianchi is signatory to the NMA.  On April 3, 2008 the NMAPC approved Bianchi's request to extend the coverage of the NMA to its work at the Bayer CropScience Charleston plant.  The NMA was not extended to any other work performed by Bianchi in the state of West Virginia.

(Id.)

Defendant states that in response to Plaintiffs' complaint filed in May of 2009, that it

> produced records to allow plaintiffs to perform the requested audit and its auditor, Stephen P. Hardin, III, issued a report asserting that Bianchi had failed to make necessary contributions in the amount of $243,047.76.  Mr. Hardin's review and calculation included work performed by Bianchi employees at the FMC Plant in West Virginia in addition to the Bayer CropScience Charleston plant.

(Id.)

Defendant further argues that

under the clear and unambiguous terms of the Agreement, the NMA applies only to a signatory contractor's work at specific job sites to which the Agreement has been expressly extended on a location-by-location basis. Bianchi requested an extension of the NMA to cover its work at the Bayer CropScience Charleston Plant and its request was expressly granted by the NMAPC. Bianchi did not request extension of the NMA to any other work in West Virginia nor was it subject to any other agreement with the Plaintiffs that would have required contributions to fringe benefit funds for that other work.

Accordingly, Bianchi was under no obligation to pay employee fringe benefits to the Plaintiffs except with respect to its employers' work performed at the Bayer CropScience Charleston Plant. The Plaintiffs' claim asserted by their Complaint in this action is not limited to Bianchi's work at that job-site, nor did their auditor limit his review to work performed at that job site. For those reasons, the Court should grant Defendant, Bianchi Industrial Services, LLC's Motion for Partial Summary Judgment to limit Plaintiffs claims to issues arising from Bianchi's work at the Bayer CropScience Charleston Plant alone.

(#22 at 5.)

### Plaintiffs' Response

Plaintiffs respond that Defendant's Motion for Partial Summary Judgment should be denied.

The employer "self reports" employees' hours, wages and the contributions and deductions due as a result of wages paid and hours worked. Audits are necessary to ensure that employers are correctly reporting the hours and wages paid. Bianchi Industrial Services provided very limited records to the auditor. Those records included 2008 W-2s, payroll journal records for Bayer CropScience job for the year 2008 through March 2009, and West Virginia State Unemployment quarterly reports for the four quarters in 2008 and the first quarter 2009. Obviously, in order for an audit to be meaningful it is necessary to require enough information [to] reconcile

the payroll journal and the W-2s and the end of the year
forms filed with the IRS.    If an audit of a "self
reporting" company is limited to only the reports the
"self-reporting" company provides it is no better than a
letter asking if the company accurately reported
everything and taking their word as an accurate
accounting.

Plaintiffs requested further information from Bianchi
through discovery requests which Bianchi objected to
providing any information for any job that was not the
Bayer CropScience job.    (See Plaintiffs' Exhibit B).
Therefore the auditor was forced to make assumptions in
order to complete his audit.    A copy of the audit
including all of the assumptions the auditor was forced
to make was sent to defendant.    (See Plaintiffs' Exhibit
C.)    As of this date the Defendant has yet to provide any
documentation that would allow the auditor to correct or
modify his audit based on the assumptions he was forced
to make due to Defendant's lack of production of
documents.

ERISA Qualified Plans' Trustees are obligated to the
Plans' participants to diligently attempt collection for
the participants.    The tool provided by case law and
statute is an audit of the employers' payroll records.
Defendant Bianchi cannot dictate the records to be
audited, otherwise the audits are suspect.    The audit
complained of by Defendant Bianchi is accurate and
correct when taking into consideration the auditor's need
to make assumptions due to Defendant Bianchi refusing
full access to the company's payroll records.

(#23 at 3-4.)

Plaintiffs further respond that they dispute Defendant's

statement regarding its auditor, Stephen P. Hardin, III:

Plaintiffs dispute Defendant's claim that sufficient
records were provided to conduct the audit.    Estimates
and assumptions were required to complete the audit.
Plaintiffs dispute the claim that Mr. Hardin's review and
calculations include work performed by "Bianchi"
employees at the FMC plant in West Virginia.    These
claims are disputed because there is no evidence that the
information provided to Mr. Hardin by Defendant "Bianchi"
and gathered by Mr. Hardin independently, logically and

indisputably lead to these conclusions.

Therefore, there remain disputed issues of material facts...

The audit was conducted with the information available. Even now there is no evidence that the audit is inaccurate or that the employees included in the audit worked anywhere except the Bayer CropScience Charleston plant...

Plaintiffs pray this Court will deny Defendant's motion for partial summary judgment, require Defendant to accept the audit as conducted or, in the alternative, restrain and enjoin Defendant, its officers, agents, servants and all persons acting on its behalf or in conjunction with it from refusing to submit the previously requested payroll records to complete a payroll audit by the Plaintiffs; require Defendant to pay the cost of this proceeding, together with reasonable attorney fees necessary for the prosecuting thereof; and award Plaintiffs such other relief against Defendant as the Court may deem meet and proper.

(#24 at 3-4.)

### Defendant's Reply to Plaintiffs' Response

Defendant Bianchi replied that

the purpose of Bianchi's Motion was to establish that the Plaintiff's claims may not include fringe benefit or audit demands for work on projects in West Virginia other than the Bayer CropScience Facility. The Plaintiffs acknowledge in their response that the audit reports that have been prepared and submitted are based on estimates and assumptions. Bianchi acknowledges that there remains an issue of fact as to whether Bianchi has failed to make all necessary contributions for employees working at the Bayer CropScience Facility. As reflected by the Plaintiffs' response, however, there is no dispute that the Plaintiffs claims should be limited to matters related to that facility alone...

In response to the Plaintiffs' demands Bianchi has provided payroll information for all of its employees working in West Virginia for the period requested. This included employees who were working on a project and at

8

a facility other than the Bayer CropScience Charleston
Plant. The Plaintiffs' auditor made an "assumption" that
all of Bianchi's employees were covered by a CBA.  As
argued by Bianchi and acknowledged by the Plaintiffs,
this was not the case...

Bianchi's Motion for Partial Summary Judgment should be
granted so that the scope of this action can be limited
to the Bayer CropScience project and leaving the amount,
if any, that was underpaid or underreported by Bianchi on
that project as the only issue remaining to be
determined.  Bianchi does not dispute that the National
Maintenance Agreement applied to the Bayer CropScience
Project but it is clear that the Plaintiffs' audit report
contains information that applies to other projects and
considerably overstates the Plaintiffs' claim.  By
granting Bianchi's Motion the Court could simplify this
matter and facilitate a resolution of Plaintiffs' claims,
whether by agreement or by trial.

(#25 at 2-3.)

## Analysis

The parties agree that Defendant Bianchi performed work at two

locations in the State of West Virginia - the FMC South Charleston

plant and the Bayer CropScience Charleston Plant - but that only

Defendant's work at the Bayer CropScience Charleston Plant was

covered by a collective bargaining agreement to which the

Plaintiffs are party.  (#21-2; #22 at 2-4; #23 at 1; #24 at 3-4.)

Work at the Bayer Crop Science Charleston plant was covered by the

National Maintenance Agreement ["NMA"], a site specific agreement

that may be extended to new projects only by way of extension

request submitted to the National Maintenance Policy Board:

This Agreement shall have application only to the work
location agreed upon between the Employer and the Union.

(#21-1 at 10.)

9

> Extensions of this Agreement shall be on a location-by-location basis and shall be sought for each location...
>
> This Agreement is a stand alone agreement and none of the provisions in any local, regional/area or national collective bargaining agreement shall apply, unless specifically incorporated in this Agreement.

(#21-1 at 28.)

Plaintiffs do not dispute that the NMA was not extended to cover any of Bianchi's work in West Virginia other than the Bayer CropScience Charleston Plant and have produced no evidence that any Bianchi work site in West Virginia other than Bayer CropScience is covered by the NMA. (#23 at 1-5; #24 at 3.) Therefore, Plaintiffs have not shown that there is a genuine issue as to a material fact relating to Defendant's Motion. Plaintiffs' argument as to the sufficiency of the audit is irrelevant to the fundamental issue of whether particular employees performing work at a specific site are covered by the NMA. Defendant has demonstrated that there is no dispute as to whether its employees working elsewhere than at the Bayer CropScience Plant were covered by the NMA.

Accordingly, pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, it is hereby **ORDERED** that Defendant's Motion for Partial Summary Judgment (# 21) is **GRANTED**.

It is noted that Defendant acknowledges that there remains an issue of fact as to whether it made all necessary contributions for employees working at the Bayer CropScience Facility. (#25 at 2.) It is further noted that Plaintiffs assert that Defendant failed to

provide adequate documents to allow an accurate and complete audit. (#23-2 at 6; #24 at 3.) Based upon these outstanding issues, it is hereby **ORDERED** that the court will conduct a status conference on these matters on Wednesday, June 30, 2010, at 10:00 a.m. at the Robert C. Byrd, U. S. Courthouse, 300 Virginia Street, East, Courtroom 5400, Charleston, West Virginia.

The Clerk is directed to transmit a copy of this Order to counsel of record.

ENTER: June 24, 2010

Mary E. Stanley
United States Magistrate Judge

11